UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFFREY A. WOODS, *et al.*,

    Plaintiff,

v.

    Civil Action 2:12-cv-00231
    Judge Edmund A. Sargus
    Magistrate Judge E.A. Preston Deavers

CAROL CROCKETT-HARRIS, *et al.*,

    Defendants.

## REPORT AND RECOMMENDATION

On March 19, 2012, the Court granted Plaintiff Jeffrey A. Woods leave to proceed *in forma pauperis*. This matter is before the Court for an initial screen of Plaintiff Woods' Complaint pursuant to 28 U.S.C. § 1915(e). At this time, the undersigned will also consider status of Plaintiff Frank Duvall. For the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** the claims of Plaintiff Duvall without prejudice. At this juncture, the Court will allow Plaintiff Woods to proceed on his condition of confinement claim involving asbestos exposure. Finally, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff Woods' retaliation claim.

### I.

Plaintiff Woods, a prisoner proceeding *pro se*, brings this action alleging violations of his constitutional rights. Plaintiff Woods brings two separate causes of action. Plaintiff Woods brings a conditions of confinement claim based on exposure to asbestos. Additionally, Plaintiff contends that Defendants, who include employees of the Pickaway Correctional Institution ("PCI") and the Ohio Department of Rehabilitation and Correction ("ODRC"), are retaliating

against him for filing a previous civil lawsuit.

Plaintiff Woods was formerly incarcerated at the Richland Correctional Insitution ("RCI"). While he was incarcerated at RCI, Plaintiff Woods filed a federal lawsuit against various state employees, including current Defendant Gary Mohr, Director of the ODRC. Plaintiff Woods was transferred from RCI to PCI in August 2011. Plaintiff Woods asserts that, upon his arrival to PCI, prison officials informed him that he was transferred there due to his request to work at Ohio Penal Industries. According to Plaintiff Woods, however, he did not request transfer to PCI to work at Ohio Penal Industries, but instead sought transfer to Marion Correctional Institution ("MCI") to attend a small engine repair program.[1]

Plaintiff Woods maintains that since his arrival at PCI he has continued to request transfer to MCI so that he may attend a small engine repair program. Additionally, Plaintiff Woods indicates that there are religiously based rehabilitation programs at MCI that are not available at PCI. Plaintiff Woods asserts that Defendants have denied his transfer requests without any written explanation. Furthermore, Plaintiff Woods contends that Defendants have informed him that if he wants to be transferred he needs to stop suing ODRC employees.[2] Finally, Plaintiff Woods also asserts that Defendants have encouraged him to commit disciplinary violations in order to allow for transfer.

In addition to Plaintiff Woods, Plaintiff Duvall, presumably another prisoner at PCI, also signed the Complaint. Only Plaintiff Woods, however, moved to proceed *in forma pauperis*. In

---

[1] Plaintiff Woods stresses that he is not eligible to work at Ohio Penal Industries because he does not have a high school diploma or GED.

[2] Plaintiff Woods also maintains that Defendants have tampered with his files to hide the fact that prison officials transferred him to PCI in order to work at Ohio Penal Industries.

its March 19, 2012 Order, the Court informed Plaintiff Duvall that he was not permitted to rely on Plaintiff Woods' *in forma pauperis* status. Accordingly, the Court directed Plaintiff Duvall to either move to proceed *in forma pauperis* or notify the Court that he was able to immediately provide his portion of the filing fee within twenty-one days. As of the date of this Report and Recommendation, Plaintiff Duvall has failed to take any action.

**II.**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[3] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
>    \*     \*     \*
>
> (B) the action or appeal--
>
>     (i) is frivolous or malicious;
>
>     (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

---

[3] Formerly 28 U.S.C. § 1915(d).

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Fed. R. Civ. P. 8(a).  *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. § 1915(e)(2)(B)(ii)).  Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 566 U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Furthermore, a complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (holding, pursuant to *Iqbal* and *Twombly*, that a plaintiff must allege sufficiently specific facts to state a facially plausible claim even if such facts are in the hands of the defendants).

In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).  Additionally, the Court must construe *pro se* complaints liberally.  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010).  The Court is not required, however, to accept

as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 129 S.Ct. at 1949.

### III.

**A.    Plaintiff Duvall**

As detailed above, the Court cautioned Plaintiff Duvall in its March 19, 2012 Order that if he wished to proceed in this action he was required to either move to proceed *in forma pauperis* or pay his portion of the Court's $350.00 filing fee. In light of Plaintiff Duvall's inaction, the undersigned assumes that he no longer desires to proceed with this action. Accordingly, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff Duvall's claims without prejudice and remove him as a Plaintiff in this action.

**B.    Plaintiff Woods**

At this juncture, Plaintiff Woods may proceed with his conditions of confinement claim concerning asbestos exposure.[4] Upon review of the Complaint, however, the undersigned concludes that Plaintiff Woods' fails to state a claim for retaliation. Accordingly, it is **RECOMMENDED** that the Court **DISMISS** this claim.

"A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment." *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 388 (6th Cir.1999) (en banc)). "To establish such a claim, a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of ordinary firmness from continuing

---

[4] This determination in no way precludes Defendants from moving to dismiss this claim if they so choose. Additionally, the undersigned acknowledges that although the Complaint names seven different Defendants, it is unclear as to the precise role each Defendant played in the alleged conduct. Defendants, however, are free to move for a more definite statement if they require further detail.

to engage in that conduct, and (3) the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Lappin*, 630 F.3d at 472.

With regard to the adverse action element, the United States Court of Appeals for the Sixth Circuit has held that the ordinary firmness standard "is not static across contexts." *Thaddeus–X*, 175 F.3d 378, 398 (6th Cir. 1999). Consequently, "in the context of a First Amendment retaliation claim, a prisoner is expected to endure more than the average citizen . . . ." *Hix v. Tenn. Dept. of Corrs.*, 196 F. App'x 350, 358 (6th Cir. 2006). At the same time, however, the Sixth Circuit has held that "while certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions . . . ." *Thaddeus-X*, 175 F.3d at 398; *see also Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("[S]ince there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable.") (internal quotations omitted).

The Sixth Circuit has considered whether a prison transfer may constitute adverse action on a number of occasions. In such situations, the Court starts with the notion that "generally a transfer to another institution does not constitute an adverse action since a transfer is merely an ordinary incident of prison life." *Jones*, 421 F. App'x 550, 553 (6th Cir. 2011) (internal quotations omitted); *see also Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases concluding that "transfer from one prison to another prison cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotations omitted). The Sixth Circuit, however, has carved out an exception to this general rule where a transfer results in foreseeable negative consequences serious enough to deter an ordinary prisoner from engaging in protected conduct.

*Siggers-El*, 412 F.3d at 701–02 (holding that transfer could constitute adverse action when it resulted in the loss of the plaintiff's "high paying job that he needed in order to pay his attorney, [and] the transfer also made it more difficult for his attorney to visit"); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (holding that threats to transfer a prisoner to a location where his family would not be able to visit could constitute adverse action); *Lappin*, 630 F.3d at 474–75 (threat to transfer a prisoner to a lock-down facility, with more restrictions and fewer privileges, constituted adverse action).

In this case, even assuming the other retaliation elements are met, Plaintiff Woods fails to sufficiently plead an adverse action. Plaintiff Woods contends that because of his earlier lawsuit, Defendants are denying him transfer from PCI to MCI. Although this case deals with a denial of transfer, rather than a transfer or threat to transfer, the undersigned finds no reason to alter the Sixth Circuit's approach to whether such action results in consequences that would defer an ordinary prisoner from engaging in protected activity. Here, the foreseeable consequences from the denial of transfer are that Plaintiff is not able to attend certain employment and rehabilitation programs that his preferred institution offers.[5] Such consequences do not reach the severity level of the consequences highlighted in *Sigger-El* and other Sixth Circuit cases applying the exception. Instead, Plaintiff pleads the types of institutional preferences that would arise anytime a prisoner is denied the prison of his or her choice. Under such circumstances, a finding of adverse action would go against the general rule that involuntary transfer is an ordinary incident of prison life and insufficient to deter a person of ordinary firmness. Accordingly, Plaintiff's pleadings fall short of alleging the requisite adverse action.

---

[5] Although Plaintiff Woods maintains that PCI does not offer the precise programs he desires, he does not go as far as to plead that PCI offers no rehabilitative programming.

**IV.**

For the foregoing reasons, it is **RECOMMENDED** that the Court **DISMISS** the claims of Plaintiff Duvall without prejudice.  At this juncture, the Court will allow Plaintiff to proceed on his condition of confinement claim involving asbestos exposure.  It is **RECOMMENDED**, however, that the Court **DISMISS** Plaintiff Woods' retaliation claim for failure to state a claim.

Once Plaintiff has provided the appropriate service materials, the United States Marshal is **DIRECTED** to serve each Defendant with a summons, the Complaint, and a copy of this Report and Recommendation.  Following service, Defendants are **DIRECTED** to Answer, or otherwise move, within the time frame outlined under the Federal Rules of Civil Procedure.

**V.**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

8

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   April 26, 2012                                              /s/ *Elizabeth A. Preston Deavers*
                                                                    Elizabeth A. Preston Deavers
                                                                    United States Magistrate Judge